# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

RMST HOLDING COMPANY, INC.,
a Florida corporation, R.M. STARK &
CO, INC., a Florida corporation, and
GARY L. STARK, individually,

        Plaintiffs,

v.                                  Case No. 9:21-cv-81995-AMC

PREMIUM 72 CAPITAL, LLC, a Texas
limited liability company, PREMIUM 72
INTERNATIONAL, LLC, a Nevada limited
Liability company, AYNBET INVESTMENTS,
LLC, a Texas limited liability company,
ARTURO NICOLAYEVSKY, individually,
EDUARDO PEREZ, individually, and ISAAC
WRIGHT, individually,

        Defendants.

_____/

## DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

Defendants, PREMIUM 72 CAPITAL, LLC ("Premium 72"); PREMIUM 72
INTERNATIONAL, LLC ("Premium Intl."); AYNBET INVESTMENTS, LLC
("AYNBET"); and ARTURO NICOLAYEVSKY ("Nicolayevsky"); and
EDUARDO PEREZ ("Perez") (collectively, "Defendants") move the Court under
Rules 12(b)(1) and 12(b)(6), *Federal Rules of Civil Procedure*, to dismiss the
*Amended Complaint* filed by Plaintiffs, RMST HOLDING COMPANY, INC
("RMST"); R.M. STARK & CO, INC ("RM Stark") and GARY L. STARK
("Stark")  (collectively, "Plaintiffs"), and state as follows:

## I.    <u>INTRODUCTION</u>

On or about January 2, 2020, Premium 72 and Stark executed the *Gary L. Stark, et al. to OPC Advisors, LLC Stock Purchase Agreement* (the "<u>Stock Purchase Agreement</u>") attached to the Amended Complaint as Exhibit "<u>B</u>," whereby Premium 72 contracted to purchase 100% of the Stock of RMST, the entity that was the holding company for RM Stark. Pursuant to the Stock Purchase Agreement, the transaction was divided into two closings, with roughly 24% of the shares of RMST transferred to Premium 72 upon execution of the Stock Purchase Agreement and the remainder of the stock of RMST to be transferred to Premium 72 upon FINRA approval. (Am. Compl. Ex. B at ¶¶ 1.1, 1.5).

On or about September 2, 2020, FINRA delivered a letter (the "<u>FINRA Letter</u>") entitled "Decision Regarding Continuing Membership Application," which approved the full sale of the remaining RMST stock to Premium 72. (Am. Compl. Ex. C). Under the terms of the FINRA Letter, FINRA provided that the execution by Stacey Stark of *R.M. Stark & Co., Inc. Membership Agreement CRD No. 7612* (the "<u>Membership Agreement</u>") that was attached to the FINRA Letter would be the final step necessary to effectuate the approved changes, which approved changes occurred with the second closing on or about September 22, 2020. (Am. Compl. Ex. C; Am. Compl. At ¶ 34). Further, the FINRA Letter provided that Gary Stark would

be replaced as CEO of RM Stark concurrent with the ownership change triggered by the execution of the Membership Agreement. *Id*.

On or about September 2, 2020, Stacey Stark, acting in her capacity as CEO of RM Stark, executed the Membership Agreement, finalizing the transaction and triggering the transfer of the remaining ownership interest in RMST to Premium 72. (Am. Compl. Ex. B).

Now, over a year after the effective date of the FINRA-Approved 100% stock purchase of RMST, Plaintiff Stark has commenced this litigation individually and on behalf of RMST and RM Stark (together, the "Purchased Entities") seeking relief from the actual owners of the Purchased Entities under various theories.

Fundamentally, this case involves Plaintiff Stark's attempt to hijack a corporation he does not own, while using that corporation, and its money, to sue the legal owners of that entity. Stark has brought this current lawsuit without the legal authority to do so – as he lacks standing to assert any claims on behalf of the entities that he neither owns nor controls. As such, Defendants requests that this Court dismiss the entire complaint for lack of standing under Rule 12(b)(1), *Federal Rules of Civil Procedure*, or, alternatively, for failure to state a claim upon which relief can be granted under Rule 12(b)(6), *Federal Rules of Civil Procedure*.

## II.   <u>ARGUMENT</u>

### A.   <u>Standard of Review</u>

A motion to dismiss under Rule 12(b)(1), *Federal Rules of Civil Procedure*, encompasses both challenges based on the court's lack of federal subject matter jurisdiction and challenges based on lack of standing. *Stalley v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) ("Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1)."). A motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) can be based upon either a facial or factual challenge to the complaint. *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007).

A "facial attack" on the complaint "require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Lawrence   v.   Dunbar,* 919   F.2d   1525,   1529   (11th   Cir.1990) (quoting *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir.1980)). When defending against a facial attack, the plaintiff has "safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised[.]" *McElmurray*, 501 F.3d at 1251.

A "factual attack," on the other hand "challenges the existence of subject matter jurisdiction irrespective of the pleadings, and extrinsic evidence may be considered." *Lawrence*, 919 F.2d at 1529; *Morrison v. Amway Corp.*, 323 F.3d 920, 925 n.5 (11th Cir. 2003) ("Appellees' motion to dismiss was a factual attack because it relied on extrinsic evidence and did not assert lack of subject matter jurisdiction solely on the basis of the pleadings."). When the attack is factual, "the trial court may proceed as it never could under 12(b)(6) . . . [b]ecause at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case." *Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. 1981). Moreover, "there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. *Id*. at 413. In short, no presumptive truthfulness attaches to plaintiff's allegations[.]" *Id*.

If a district court determines that there is no standing and, thus, no subject matter jurisdiction, it cannot hear the merits of the case. *Bochese v. Town of Ponce Inlet,* 405 F.3d 964, 974 (11th Cir.2005).

**B. The Amended Complaint Must be Dismissed for Failure to Plead Standing (Facial Attack).**

Stark has incredibly filed this lawsuit not only in his individual capacity, but also on behalf of the Purchased Entities—the very entities in which Premium 72 has acquired a 100% ownership interest. Stark has brought this suit using funds belonging to the Defendants and without pleading the legal authority to file such an

action.  The latter pleading defect exists, of course, because no such authority exists.

Plaintiff Stark has alleged each of the thirteen counts in the Amended Complaint as

a claim for relief by "Plaintiffs," which was designated in the introductory paragraph

to encompass the Purchased Entities and Stark.  (Am. Compl. at p. 1) As such, the

viability of any of plaintiffs' causes of action depend on whether Stark has alleged

on the face of the Amended Complaint that he has standing to bring suit on the behalf

of entities that he does not control. *Alabama v. United States Envtl. Protection

Agency,* 871 F.2d 1548, 1554 (11th Cir. 1989) (noting that "[s]tanding is a

jurisdictional prerequisite to suit in federal court"). "[A]t the pleading stage, the

plaintiff must clearly . . . allege facts demonstrating each element" of standing. *Fox

v. Ritz-Carlton Hotel Co., L.L.C.*, 977 F.3d 1039, 1046 (11th Cir. 2020).

Here the Amended Complaint is devoid of any allegations of standing that

would permit Stark to proceed with this suit on behalf of the entities in which he

holds no ownership interest. The Amended Complaint merely contains generic

allegations about the citizenship of the parties and jurisdictional minimums. (Am.

Compl. at p. 2,3). This is insufficient to plead standing, let alone any type of

authority to bring this suit on behalf of the Purchased Entities. Accordingly, the

Amended Complaint has not sufficiently alleged Standing, an essential component

of this lawsuit, and must be dismissed.

C. **The Amended Complaint Should be Dismissed Because Stark does not Have Standing to Bring a Lawsuit on Behalf of the Purchased Entities (Factual Attack).**

Pleading deficiencies aside, Stark, cannot show that he has standing to sustain this suit as a factual matter. As discussed *supra*, this action was brought by the "Plaintiffs" who were designated in the Amended Complaint as the Purchased Entities and Stark. (Am. Compl. at p. 1). Moreover, each of the thirteen counts—regardless of at which Defendant(s) the allegations were aimed—were asserted collectively by the Plaintiffs. As such, in order to sustain any of his claims for relief, Stark was required to plead that he has standing to bring legal action on behalf of RMST and RM Stark—an allegation that, as a matter of fact, he is unable to make.

In order to sustain a lawsuit on behalf of a corporation, Plaintiffs must be shareholders or members of the corporation on whose behalf they have brought suit at the time that the have filed the suit and continuing through the life of the action. *Conboy v. Black Diamond Properties, Inc.*, No. 508CV00236ORL35GRJ, 2009 WL 10708012, at *3 (M.D. Fla. May 5, 2009.). Furthermore, only a shareholder, by virtue of his "proprietary interest in the corporate enterprise," may "step into the corporation's shoes and . . . seek in its right the restitution he could not demand in his own." *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 321, 56 S.Ct. 466, 471, 80 L.Ed. 688 (1936); *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 548, 69 S.Ct. 1221, 1226, 93 L.Ed. 1528 (1949).

A reading of the Amended Complaint itself reveals the very baselessness of Stark's purported authority, which is fatal to the Amended Complaint in its entirety. In Paragraph 25 of the Amended Complaint, Plaintiffs explain that the Stock Purchase Agreement expressly provided that the transfer of 100% of the stock of RMST would be completed in two "closings," with the second closing following FINRA approval. (Am. Compl. at ¶ 25). Next, Paragraph 30 of the Amended Complaint explained that FINRA approved that transaction (Am. Compl. at ¶ 30). As previously noted, the FINRA Letter attached the Membership Agreement, the execution of which would replace Stark as CEO and consummate the transfer of the remainder of shares in RMST to Premium 72. (Am. Compl. Ex. B). This Membership Agreement was executed by Stacey Stark on or about September 2, 2020. (Am. Compl. Ex. C).  Plaintiffs directly acknowledge in paragraph 34—and indirectly in paragraphs 31 and 136—of the Amended Complaint that the second closing occurred "on or about September 22, 2020."  Plaintiffs even rely on the validity of this second closing transaction later in the Amended Complaint, where it is alleged that Defendants are "majority shareholders." (Am. Compl. at ¶ 136). Defendants would not have been able to become "majority shareholders" if not for the second closing following FINRA approval.[1]

---

[1] Plaintiffs' acknowledgement of the occurrence of the second closing aside, Plaintiffs' use of the label "majority" shareholder in paragraph 136 of the Amended Complaint is misleading, as it implies the existence of one or more minority

As a result of the execution of the Membership Agreement and Stark's simultaneous relinquishment of his remaining equity in the Purchased Entities to Defendants, he effectively divested himself of any authority to bring a suit on behalf of either corporation. As Stark is not a shareholder of either of the Purchased Entities, he cannot claim to have been harmed by the purported "mismanagement" of the entities, and therefore claim to bring this suit as a derivative action. *Parks v. F.D.I.C.*, No. 6:13-CV-342-ORL-36, 2013 WL 1278119, at *3 (M.D. Fla. Mar. 7, 2013) (Finding that the plaintiff "[did] not have standing to pursue the legal rights and interests of [the] Corporation, either in her individual capacity or in her capacity as former owner and officer of the corporation" because there was not harm specific to her.).

The issue of standing in the current matter can be addressed without the traditional analysis of caselaw distinguishing the injury of the individual shareholder from the corporation. That is because of the fact that Premium 72 owns 100% of RMST, which wholly owns RM Stark. Accordingly, Stark has no standing to claim to have been harmed by any purported mismanagement and is certainly without an avenue to argue that he has the authority to bring suit on behalf of either corporation.

---

shareholder, none of whom Plaintiffs directly name. The inference of the existence of minority shareholders is grossly misleading, as Defendants own 100% of the shares of RMST.

### III.   CONCLUSION

For the reasons set forth herein, Defendants respectfully request that the cause of action filed by Plaintiffs be dismissed with prejudice.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 10, 2022, a copy of the foregoing has been furnished to all counsel of record.

*s/ Jason Ward Johnson*

**Tucker H. Byrd**
Florida Bar No. 381632
**Jason Ward Johnson**
Florida Bar No. 186538
**BYRD CAMPBELL, P.A.**
180 Park Avenue North, Suite 2A
Winter Park, Florida 32789
Telephone: (407) 392-2285
Facsimile: (407) 392-2286
Primary Email: TByrd@ByrdCampbell.com
Primary Email: JJohnson@ByrdCampbell.com
Secondary Email: RMicale@ByrdCampbell.com
*Attorneys for Defendants*