UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 21-81995-CIV-CANNON

**RMST HOLDING COMPANY, INC.**,
**R.M. STARK & CO, INC**, and
**GARY L. STARK**,

    Plaintiffs,

v.

**PREMIUM 72 CAPITAL, LLC**,
a Texas limited liability company,
**PREMIUM 72 INTERNATIONAL, LLC**,
a Nevada limited liability company,
**AYNBET INVESTMENTS, LLC**,
a Texas limited liability company,
**ARTURO NICOLAYEVSKY**,
**EDUARDO PEREZ**,
and **ISAAC WRIGHT**, individually,

    Defendants.
_____/

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS

**THIS CAUSE** comes before the Court upon Defendants' Motion to Dismiss Plaintiffs' Amended Complaint [ECF No. 16]. The Court has reviewed the Motion, Plaintiffs' Response in Opposition [ECF No. 17], and the full record. Defendants did not file a Reply. For the reasons discussed below, Defendants' Motion to Dismiss [ECF No. 16] is **DENIED**.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

According to the Amended Complaint, in 1994, Plaintiff Gary L. Stark ("Stark") purchased a controlling interest in R.M. Stark & Co., Inc., a broker-dealer registered with the U.S. Securities

---

[1] The following facts are drawn from Plaintiffs' Amended Complaint [ECF No. 6] and the attachments to Plaintiffs' original complaint [ECF No. 1], which are incorporated by reference in the Amended Complaint.

1

and Exchange Commission ("RM Stark") [ECF No. 6 ¶¶ 3, 17–18]. RM Stark is wholly owned and organized by RMST Holding Company, Inc. ("RMST"), a Florida corporation with its principal place of business in Lake Worth Beach, Florida [ECF No. 6 ¶¶ 2–3].

In the Fall of 2019, Defendants Premium 72 Capital ("Premium 72") and Premium 72 International, LLC ("Premium International") commenced negotiations—under their prior name of OPC Advisors, LLC—to acquire 100% of the shares of RMST from Stark [ECF No. 6 ¶ 20]. Premium 72 and Premium International are owned by Defendants Arturo Nicolayevsky, Eduardo Perez, and Aynbet Investments, LLC [ECF No. 6 ¶ 7].

On January 2, 2020, Stark and Premium 72 Capital executed a stock purchase agreement to transfer 24% of RMST's stock to Premium 72 Capital upon an initial closing (the "First Closing"), and to transfer the remainder of RMST's stock at a subsequent closing (the "Second Closing") following approval of the parties' purchase by the Financial Industry Regulatory Authority ("FINRA") [ECF No. 6 ¶¶ 24–26]. To effectuate the purchase, Premium 72 submitted to FINRA a Form 1017 Continuing Membership Application (the "CMA") [ECF No. 6 ¶ 28]. On September 22, 2020, FINRA approved Premium 72's CMA [ECF No. 6 ¶ 30].

That same day, on September 22, 2020, Stark and Defendants Premium International, Nicolayevsky, and Perez entered into a supplemental purchase agreement (the "Supplemental Agreement") [ECF No. 1-7; ECF No. 6 ¶ 34]. The Supplemental Agreement "was effectuated to provide for additional compensation to [Stark] for his expertise and in consideration of his agreement to assist Defendants in continuing the success of RMST and RM STARK, as well as assisting PREMIUM 72 and PREMIUM INTL in becoming successful, profitable enterprises" [ECF No. 6 ¶ 39]. The Supplemental Agreement required Defendants to execute a promissory note in favor of Stark in the amount of $2,900,000 [ECF No. 1-7 pp. 1–2; ECF No. 6 ¶ 36].

CASE NO. 21-81995-CIV-CANNON

As collateral for the promissory note, the Supplemental Agreement contained a security provision pledging to Stark (1) "stock powers for the transfer of securities held by OPC to Seller in an amount equal to the balance of all principal and interest due under the Note" and (2) the proceeds of Nicolayevsky's life insurance policy in the amount of $2,900,000 [ECF No. 1-7 p. 2; ECF No. 6 ¶¶ 35–37]. The Promissory Note provides that, in the event of a default, Stark may "(i) declare the outstanding principal balance and all accrued but unpaid interest under this Note at once due and payable, and (ii) pursue any and all other rights, remedies and recourse available to Payee hereunder or under applicable law" [ECF No. 1-7 p. 7].

Plaintiffs allege that, after FINRA approved the CMA, Defendants subsequently defaulted on their obligations under the Promissory Note, "refused to make the payments" due to Stark, "failed to perform any of their promises and covenants," and failed to perform "any obligations required of them, pursuant to the terms of the Supplemental Agreement" [ECF No. 6 ¶¶ 41, 45]. Plaintiffs further allege that, despite the Defendants' refusal to comply with the terms of the Supplemental Agreement and the Promissory Note, the "Security Provision creates for [Stark] a viable security interest in the securities of RMST and other stock held by Defendants" [ECF No. 6 ¶ 116].

In addition to Defendants' alleged failure to comply with their financial obligations to Stark, Plaintiffs allege that Defendants engaged in "a pattern of unlawful activity, gross mismanagement, and improper acts," including making unauthorized personnel changes at RM Stark; unlawfully accessing RM Stark's computer systems; entering into an unauthorized agreement to sell future revenues of RM Stark; and, without prior permission from Stark, applying for and receiving a loan from the U.S. Small Business Administration through the Payroll Protection Program [ECF No. 6 ¶¶ 53–54, 56, 59–61, 63–65, 84–94].

Based on these allegations, Plaintiff filed their Complaint on October 28, 2021 [ECF No. 1], later amending it on November 23, 2021 [ECF No. 6]. Plaintiffs invoke the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332 [ECF No. 6 ¶ 14]. The operative Amended Complaint asserts 13 causes of action under Florida law against all defendants:

- **Count I** - Declaratory Relief as to the Control of RMST and RM Stark.
- **Count II** – Injunctive Relief to Enjoin Interference in the Management, Operation and Control of RMST and RM Stark.
- **Count III** – Declaratory Relief as to the Terms of Promissory Note and Security Provision.
- **Count IV** – Breach of Promissory Note
- **Count V** – Breach of Stock Purchase Agreement
- **Count VI** – Breach of Supplemental Purchase Agreement
- **Count VII** – Breach of FINRA Continuing Membership Application
- **Count VIII** – Breach of Fiduciary Duty
- **Count IX** – Tortious Interference
- **Count X** – Accounting
- **Count XI** – Petition to Appoint a Receiver
- **Count XII** – Civil Theft
- **Count XIII** – Conversion

[ECF No. 6 ¶¶ 100–165].

On February 10, 2022, Defendants filed the instant Motion to Dismiss the Amended Complaint for lack of standing as to Plaintiff Stark, citing Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) [ECF No. 16]. Defendants do not appear to challenge whether Plaintiffs RMST and RM Stark have standing to sue but nevertheless seek dismissal of the entire Amended

Complaint on the theory that Plaintiff Stark "hijacked" corporate entities (RMST and RM Stark) he does not own [ECF No. 16 p. 3].

The Motion is ripe for adjudication.

## LEGAL STANDARD

A Rule 12(b)(1) motion challenges the district court's subject matter jurisdiction and takes one of two forms: a "facial attack" or a "factual attack." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). A facial attack on the complaint requires the court merely look to see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, taking as true the allegations in the plaintiff's complaint. *Id.* "By contrast, a factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony." *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1233 (11th Cir. 2008). Regardless of whether a challenge is facial or factual, "[t]he burden for establishing federal subject matter jurisdiction rests with the party bringing the claim." *Williams v. Poarch Band of Creek Indians*, 839 F.3d 1312, 1314 (11th Cir. 2016) (quoting *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005)). If a district court determines that it lacks subject matter jurisdiction to hear the case, the court must dismiss the action. *See* Fed. R. Civ. P. 12(h)(3).

## DISCUSSION

Defendants argue that Plaintiff Stark "lacks standing to assert any claims on behalf of the entities that he neither owns nor controls" [ECF No. 16 p. 3]. Specifically, Defendants contend that, because Stark sold 100% of his shares of stock in RMST to Premium 72 on September 22, 2020, Stark thus "has no standing to claim to have been harmed by any purported mismanagement [of RMST and RM Stark] and is certainly without an avenue to argue that he has the authority to

bring suit on behalf of either corporation" [ECF No. 16 p. 9]. In support of this position, Defendants note that Paragraph 34 of the Amended Complaint acknowledges that the second closing of the Stock Purchase Agreement occurred "on or about September 22, 2020," consummating the transfer of the remainder of shares in RMST to Premium 72 [ECF No. 16 p. 8; ECF No. 6 ¶ 34]. As a result of this transfer in stock ownership, Defendants argue that Stark has "effectively divested himself of any authority to bring a suit on behalf of either corporation" [ECF No. 16 p. 9].

Plaintiffs oppose the Motion, arguing that Plaintiff Stark has standing to bring claims on behalf of himself, RMST, and RM Stark because he has a controlling interest in those entities [ECF No. 17 pp. 3–4]. More specifically, Plaintiffs say that "Defendants have not properly paid for the stock they purport to have acquired and, further, have defaulted on their obligations contained in the promissory note in favor of Stark" [ECF No. 17 p. 3]. Such default, Plaintiffs maintain, has the effect of "revert[ing] to Stark all right, title and interest in RMST" [ECF No. 17 p. 3; *see* ECF No. 1-7 p. 6 (referring to language of Promissory Note, which provides that Defendants stock powers will be held as security for the prompt payment of the Promissory Note))]. Alternatively, Stark continues, even if ownership of RMST and RM Stark did not revert back to him on account of those entities' alleged default under the Promissory Note, Defendants still owe a fiduciary duty to Stark in his capacity as creditor "to preserve the collateral securing Stark's loan to the Nicolayevsky Defendants" [ECF No. 17 p. 3; *see also* ECF No. 17 pp. 3–4 (noting that Count VIII sufficiently pleads a breach of fiduciary duty by alleging that Defendants "have fraudulently pledged the collateral multiple times to multiple parties")]. Finally, Plaintiff Stark clarifies that he is not attempting to bring a derivative action on behalf of all shareholders of

RMST and RM Stark, explaining that RMST and RM Stark are bringing the lawsuit in their own names as well, "seeking redress for their own injuries" [ECF No. 17 pp. 6–8].

Upon review of the Amended Complaint, the Court determines that dismissal under Rule 12(b)(1) is unwarranted because Plaintiffs have met their burden of demonstrating that Stark has standing to bring his claims.

As a threshold matter, and as Defendants concede [ECF No. 16 p. 7], Defendants bring a factual attack on the Court's subject matter jurisdiction. *See Lawrence*, 919 F.2d at 1529. This is because, according to Defendants, they—not Stark—own 100% of the shares of RMST and RM Stark, thus depriving Stark of standing to bring claims on behalf of those entities. As the Eleventh Circuit has instructed, in the case of a factual attack on subject matter jurisdiction, if the court determines that the challenge implicates the merits of Plaintiffs' claims, the Court should "find that jurisdiction exists" and deal with the objection instead as a direct attack on the merits of Plaintiffs' case, using the standards of Rule 12(b)(6) or Rule 56 depending on the circumstance of the case. *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1261 (11th Cir. 1997) (citing *Williamson v. Tucker*, 645 F.2d 404, 415–16 (5th Cir. 1981)).

Applying these standards here, the Court determines that Defendants' attack on subject matter jurisdiction implicates the merits of Plaintiffs' causes of action. The essence of Defendants' challenge is that Stark cannot bring this action on behalf of either RMST or RM Stark because he relinquished his remaining equity in those entities to Defendants via the Supplemental Agreement [ECF No. 16 p. 9]. Meanwhile, Plaintiff Stark alleges, *inter alia*, that Defendants have defaulted on their obligations under the Supplemental Agreement and the Promissory Note, the effect of which is that ownership in those entities reverted back to him—giving him a controlling interest sufficient to confer standing upon him to sue for those alleged breaches (Count I, Count III, Count

IV, and Count VI) [ECF No. 17 pp. 3–4; ECF No. 6 ¶¶ 117–131; *see* ECF No. 6 ¶¶ 40–41 (alleging that, in the event that Defendants defaulted on their payments under the Promissory Note, Stark would be "granted stock powers for the securities held by NICOLAYEVSKY and PEREZ," and then further alleging that Defendants defaulted on their obligations and failed to make payments due to Stark)]. Consequently, as presented, the question of whether Defendants breached the terms of the Promissory Note and the Supplemental Agreement directly affects Plaintiffs' jurisdictional theory of the case: that Defendants' breach caused the stock ownership of RMST and RM Stark to revert back to Stark. Defendants' factual challenge as to whether Stark maintains control over RMST and RM Stark—and thus has standing to bring claims on behalf of those entities—implicates both the jurisdictional basis and a requisite element of Plaintiffs' claims.

Because Defendants' attack on subject jurisdiction implicates the merits of Plaintiffs' causes of action, the Court therefore finds that jurisdiction exists; treats Defendants' Motion as an attack on the merits of Plaintiffs' claim; and ultimately concludes under Rule 12(b)(6) that dismissal of the Amended Complaint is unwarranted on the theory presented. As stated above, Defendants challenge in the instant Motion is that they—not Stark—own 100% of the shares of RMST and RM Stark, thus depriving Stark of standing to bring claims on behalf of those entities and warranting dismissal of the entire Amended Complaint [ECF No. 16 pp. 6, 9]. Taking the factual allegations in the Amended Complaint as true, however, and construing them in the light most favorable to Plaintiffs, *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008), Plaintiffs have adequately alleged that Stark had a controlling interest in RM Stark (wholly owned by RMST); Defendants defaulted on their obligations under the Promissory Note; and that accordingly, ownership of those entities reverted back to him under the terms of the Promissory Note and the Supplemental Agreement [ECF No. 6 ¶¶ 17, 35–37, 40–41, 116]. Whether these

allegations ultimately bear out is a disputed question of fact that requires reference to matters outside the pleadings. Nor have Defendants offered any response to Plaintiffs' alternative standing argument as relates to Defendants' alleged breach of fiduciary duty [ECF No. 17 pp. 3–4]. In any event, at this stage, with the limited record presented, the Court declines to dismiss the Amended Complaint on the basis presented by Defendants. Defendants may challenge any evidence of the ownership of these corporate entities as relevant to summary judgment, following discovery.

## CONCLUSION

Accordingly, for the reasons stated above, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion [ECF No. 16] is **DENIED**.

2. Defendants shall file an answer to the Amended Complaint **on or before May 26, 2022**. *See* Fed. R. Civ. P. 12(a)(4)(A).

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 10th day of May 2022.

AILEEN M. CANNON
UNITED STATES DISTRICT JUDGE

cc: counsel of record