UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

RMST HOLDING COMPANY, INC., et al.,

    Plaintiffs,

v.    Case No. 21-81995-CIV-CANNON/Reinhart

PREMIUM 72 CAPITAL, LLC, et al.,

    Defendants.
_____/  CONSOLIDATED WITH

BYLINE BANK,

    Plaintiff,

v.    Case No. 22-80838-CIV-CANNON/Reinhart

PREMIUM 72 CAPITAL, LLC, et al.,

    Defendants.
_____/

**BYLINE BANK'S MOTION TO STRIKE
JURY DEMAND IN THIRD AMENDED COMPLAINT**

    Pursuant to Federal Rule of Civil Procedure 12(f), Byline Bank ("**Byline**") moves to strike the demand for a jury trial asserted in the Third Amended Complaint by RMST Holding Company, Inc., R.M. Stark & Co., Inc., and Gary Stark (collectively, the "**Stark Group**").[1]

**BRIEF BACKGROUND**

    Byline entered into two loan agreements with RMST Holding Company, Inc. ("**RMST**"), Premium 72 Capital, LLC f/k/a OPC Advisors, LLC ("**Premium 72 Capital**"), Aynbet Investments, LLC ("**Aynbet**"), and Arturo Nicolayevsky ("**Nicolayevsky**"). (*See* M. Mullins Decl. ¶¶ 5-6).[2] First, Byline agreed to loan $1,575,000 to RMST, Premium 72 Capital, and Aynbet pursuant to a Loan Agreement dated December 31, 2019. (*See* ECF No. 117, ¶ 71; ECF No. 117-

---

[1] Byline's previous motion to strike the jury demand in the Stark Group's Second Amended Complaint was "denied without prejudice to be refiled as necessary following amendment" by the Stark Group. (ECF No. 112 at 3, ¶ 4).

[2] A copy of the declaration of Matthew Mullins in support of Byline's request to strike the Stark Group's jury demand, which was originally filed in support of Byline's previous motion to strike, is attached hereto as Exhibit 1.

10). Nicolayevsky personally guaranteed this loan. (*See* ECF No. 117-10, § 2.4). Pursuant to the express terms of the loan agreement, the proceeds for this loan were to acquire all shares of R.M. Stark & Co., Inc. ("**R.M. Stark Co.**") and to cover some of R.M. Stark Co.'s operating expenses. (*See id.* at 2, ¶ D). According to the Third Amended Complaint, RMST apparently did or currently does "wholly own[ ]" R.M. Stark Co. (ECF No. 117, ¶ 3). The Third Amended Complaint also alleges Gary Stark is or was the owner and principal of RMST and/or R.M. Stark Co. (*See id.* ¶¶ 25, 32; ECF No. 117-2). Second, Byline agreed to loan another $835,000 to RMST, Premium 72 Capital, and Aynbet pursuant to a Loan Agreement dated December 28, 2020. (*See* ECF No. 117, ¶ 194; ECF No. 117-30). Nicolayevsky personally guaranteed this loan. (*See* ECF No. 117-30, § 2.4).

Both loan agreements, which are attached to the Third Amended Complaint, include identical provisions that expressly waive the parties' right to a jury trial:

> **<u>Waiver of Jury Trial</u>. Borrowers and Lender hereby knowingly, voluntarily and intentionally waive the right either may have to a trial by jury in respect to any litigation based on, or arising out of, under or in conjunction with the Note, this Loan Agreement, the Loan Documents and any other documents contemplated to be executed in conjunction herewith or therewith or any course of conduct, course of dealing, statements (whether verbal or written) or actions of either party. This provision is a material inducement for Lender making the Loan evidenced by the Note.**

(ECF No. 117-10, § 8.6; ECF No. 117-30, § 8.6).

The terms of the loan agreements were negotiable. (*See* M. Mullins Decl. ¶ 8). In fact, the terms were negotiated by the borrowers. (*See id.*). Byline did not compel, pressure, or force the borrowers to enter into the loan agreements. (*See id.* ¶ 9). Nor did Byline prevent the borrowers from having their legal counsel review the loan agreements. (*See id.* ¶ 10).

RMST and the other borrowers eventually defaulted under the loan agreements. Byline thereafter sued RMST and the other borrowers for breach of contract and to foreclose on its security interest. Because R.M. Stark Co. and Gary Stark received and/or benefited from the loan proceeds under the loan agreements, Byline also sued R.M. Stark Co. and Gary Stark for unjust enrichment.

As explained in Byline's near contemporaneously-filed Motion to Dismiss, after Byline sued the Stark Group, the Stark Group sued Byline. The Third Amended Complaint asserts claims against Byline for aiding and abetting civil theft and conversion (Counts XIII and XV), negligence

and gross negligence (Counts XVI and XVII), and declaratory relief (Counts XVIII, XXVI, and XXIX).  All of these claims arise out of the loan transactions described above and in the Motion to Dismiss.  The Third Amended Complaint also includes a demand for a jury trial.

## **ARGUMENT**

The Court should strike the Stark Group's jury trial demand because the parties expressly waived their right to a jury trial in the loan agreements.  A party may validly waive the right to a jury trial if the waiver is knowing and voluntary.  *Bakrac, Inc. v. Villager Franchise Sys., Inc.*, 164 F. App'x 820, 823 (11th Cir. 2006).  To determine whether the waiver was knowing and voluntary, "courts consider the conspicuousness of the waiver provision, the parties' relative bargaining power, the sophistication of the party challenging the waiver, and whether the terms of the contract were negotiable."  *Id.* at 823-24.  "No single factor is conclusive, and the court is not bound by the number of factors that are satisfied."  *Balchunas v. Bank of Am., N.A.*, No. 2:20-CV-14106, 2020 WL 4718435, at *2 (S.D. Fla. Aug. 13, 2020).  Here, all of these factors establish that the jury trial waiver provisions are enforceable because they were knowingly and voluntarily given.

The waiver provisions in the loan agreements are conspicuous.  Among other things, the waiver provisions are contained within their own short, separate, and numbered paragraphs.  (*See* ECF No. 117-10, § 8.6; ECF No. 117-30, § 8.6).  The waiver provisions are completely bolded and use the same font size as the other provisions in the loan agreements.  (*See id.*).  The waiver provisions also use clear, unambiguous language.  (*See id.*).  Additionally, the provisions include clear, descriptive headings stating: "**Waiver of Jury Trial**."  (*Id.*).  Thus, the waiver provisions are conspicuous.  *See, e.g.*, *Balchunas*, 2020 WL 4718435, at *2 (holding waiver provision was conspicuous because it was contained in its own separate paragraph, used same font as rest of document, and had descriptive heading titled, "Waiver of Jury Trial"); *Martorella v. Deutsche Bank Nat. Tr. Co.*, No. 12-80372-CIV, 2013 WL 1136444, at *3 (S.D. Fla. Mar. 18, 2013) (holding waiver provision was conspicuous because it was contained in its own separate paragraph, used same font as rest of document, used clear and unambiguous language, was included on last page of agreement and above plaintiff's signature, and was not buried in a footnote); *Oglesbee v. IndyMac Fin. Servs., Inc.*, 675 F. Supp. 2d 1155, 1158 (S.D. Fla. 2009) (holding waiver provision was conspicuous because provision was "set off as its own paragraph and conspicuously labeled 'Jury Trial Waiver,'" "[i]t is in the final paragraph on its page and is the last substantive paragraph in the document," and "[t]he waiver is in the same size font as the rest of the document and the

language is clear and easy to read").

There is nothing to suggest that there was a gross disparity in the bargaining power between the parties. "[T]he question is not whether there was unequal bargaining power . . . but whether there was a gross disparity in bargaining power. A gross disparity in bargaining power only exists when a party is forced to accept the terms of an agreement as written; the party is unable to simply walk away if the terms are unacceptable." *Balchunas*, 2020 WL 4718435, at *2 (citations and internal quotation marks omitted). The loan agreements were commercial transactions for millions of dollars between sophisticated businesses. Indeed, the Third Amended Complaint establishes the borrowers received approximately $2.4 million in loan proceeds by entering into these loan agreements. The terms of the loan agreements were negotiable. (*See* M. Mullins Decl. ¶ 8). The loan agreements were in fact negotiated by the borrowers (*See id.*), which is expressly stated in the loan agreements (*see* ECF No. 117-10, § 8.15; ECF No. 117-30, § 8.15). Byline did not compel, pressure, or force the borrowers to enter into the loan agreements. (*See* M. Mullins Decl. ¶ 9). Nor did Byline prevent the borrowers from having their legal counsel review the loan agreements. (*See id.* ¶ 10). Accordingly, there was no gross disparity between the parties.

The Stark Group, the parties seeking to avoid the jury trial waiver provisions, are sophisticated businesses and financial professionals who could understand the jury trial waiver provisions. (*See* ECF No. 117, ¶¶ 2-4, 25-27). In any case, as explained above, the waiver provisions are clear and conspicuous, so "[t]his use of plain language negates the need for a high level of sophistication to understand the implications of the waiver." *Abukhodeir v. AmeriHome Mortgage Co., LLC*, No. 8:21-CV-563-WFJ-JSS, 2022 WL 370116, at *1 (M.D. Fla. Feb. 8, 2022). Likewise, "[o]ne does not require specialized knowledge or expertise to understand the waiver provision." *Balchunas*, 2020 WL 4718435, at *2.

The Stark Group's challenge to the enforceability of the loan agreements does not impact the enforceability of the jury trial waiver provisions. While the Stark Group challenges the enforceability of the loan agreements, it does not expressly challenge the jury waiver provisions within the loan agreements. Accordingly, the jury waiver provisions still apply. *See Oglesbee*, 675 F. Supp. 2d at 1159 ("Plaintiff, however, only alleges that the agreement is fraudulent, Plaintiff does not contend that the jury trial waiver itself was procured by fraud. The waiver is therefore still valid and enforceable.").

All of the Stark Group's claims fall within the jury trial waiver provisions. The Stark

Group's declaratory relief claims fall directly within the waiver provisions because it concerns the enforceability of the loan agreements. *See Collins v. Countrywide Home Loans, Inc.*, 680 F. Supp. 2d 1287, 1291-95 (M.D. Fla. 2010) (holding contractual jury trial waiver applied to declaratory judgment claim). Additionally, the Stark Group's aiding and abetting claims and negligence claims against Byline fall within the waiver provisions because they are based on and arise out of the loan agreements. For example, the Stark Group's damages claims are based on alleged misrepresentations made during the loan process. (*See* ECF No. 117, ¶¶ 267-73, 279-314). Furthermore, all of these claims seek damages through "repayment of all misappropriated amounts to Plaintiffs" arising out of the loan transactions or "repayment of all loan amounts to Plaintiffs." (*Id.* ¶¶ 273(C), 287(B)-(C), 300(B), 314(C)). Thus, in addition to its declaratory relief claims, the Stark Group's damages claims against Byline likewise fall within the jury trial waiver. *See Ackner v. PNC Bank, Nat'l Ass'n*, No. 16-81648-CIV, 2017 WL 7355329, at *5 (S.D. Fla. Dec. 22, 2017) (holding negligence claims against bank were subject to contractual jury trial waiver because claims arose out of contract with bank); *Fahey v. Am. Home Mortgage Servicing, Inc.*, No. 11-62544-CIV, 2012 WL 13034913, at *1 (S.D. Fla. Dec. 11, 2012) (holding claims that were allegedly "separate and apart" from contract still fell within contract's jury waiver provision because claims arose out of contract); *Collins*, 680 F. Supp. 2d at 1291-95 (holding contractual jury trial waiver applied to negligence and fraud claims).

      R.M. Stark Co. and Gary Stark are bound by the jury trial waivers in the loan agreements, even if they are not signatories to the loan agreements. Indeed, R.M. Stark Co. and Gary Stark collectively assert joint claims with RMST, who is a named party in both loan agreements. And those joint claims arise out of and are intertwined with the loan agreements. Thus, R.M. Stark Co. and Gary Stark are bound by the jury trial waivers. *See Bakrac, Inc. v. Villager Franchise Sys., Inc.*, No. 02-23434-CIV-HUCK, 2003 WL 25730511, at *4 (S.D. Fla. Nov. 3, 2003) ("Finally, the jury waiver applies to all of the claims asserted by and against all parties, even Cendant and Rodgers, who are not signatories to the Franchise Agreement or the Guaranty. The broad language of the waiver—'applying to any action related to this Agreement'—brings it to bear on the claims against Cendant and Rodgers because those claims arise out of and are intertwined with the Franchise Agreement and Guaranty."); *see also Henson v. Allison Transmission*, No. 07-80382-CIV, 2008 WL 11412111, at *2 (S.D. Fla. Jan. 8, 2008) (holding plaintiff's claims against non-signatory defendants were still subject to jury trial waiver in contract); *accord Okura & Co. (Am.),*

*Inc. v. Careau Grp.*, 783 F. Supp. 482, 489-90 (C.D. Cal. 1991) (holding jury waiver for "any claim" arising out of contract applied to fraud claim, even against non-signatory of contract, because such claims related to and were derived from contract).

## CONCLUSION

For the reasons explained above, the parties expressly waived their right to a jury trial. Accordingly, the Court should enter an order striking the Stark Group's demand for a jury trial (at least with respect to the claims against Byline).

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1(A)(3)

Pursuant to Local Rule 7.1(a)(3), counsel for Byline conferred in good-faith with counsel for the Stark Group regarding the relief sought in this Motion, and the Stark Group opposes the relief sought in this Motion. As of the filing of this Motion, counsel for Zahav, Kingdom Logistics, Prompt Capital, Pinnacle, Money Store, and Bitty has not made an appearance in this action. Likewise, substitute counsel for Aynbet, Premium International, Premium Capital, Nicolayevsky, and Perez has not made an appearance in this action. Accordingly, counsel for Byline could not confer with counsel for these parties regarding the relief sought in this Motion.

Dated: February 21, 2023

HOLLAND & KNIGHT LLP

*/s/ Daniel Buchholz*
Jason H. Baruch, FBN: 10280
jason.baruch@hklaw.com
Daniel L. Buchholz, FBN: 1010188
daniel.buchholz@hklaw.com
100 N. Tampa Street, Suite 4100
Tampa, Florida 33602
813-227-8500
*Attorneys for Byline Bank*

**CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on February 21, 2023, I electronically filed the foregoing document with the Clerk of the United States District Court for the Southern District of Florida using the CM/ECF system will caused a copy of the foregoing document to be served by email to all counsel and pro se parties of record.

                */s/ Daniel Buchholz*
                Attorney