UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:21-cv-81995-AMC

**RMST HOLDING COMPANY, INC.,** *et al.*

    Plaintiffs,

v.

**PREMIUM 72 CAPITAL, LLC,** *et al.*

    Defendants.
_____/

**BYLINE BANK,**                                  Consolidated Action: 22-80838-CIV-AMC

    Plaintiff,

v.

**PREMIUM 72 CAPITAL LLC,** *et al.*

    Defendants.
_____/

### MOTION FOR CLARIFICATION OF ECF NO. 209

Plaintiffs RMST Holding Company, Inc. ("RMST"), R.M. Stark & Co., Inc. ("RM Stark") and Gary L. Stark ("Mr. Stark") (collectively, "Stark Plaintiffs") hereby file their Motion for Clarification of ECF No. 209. Specifically, the Stark Plaintiffs request clarification from the Court on Byline Bank's ability to foreclose on RMST's assets, which Defendant Arturo Nicolayevsky ("Nicolayevsky") improperly pledged as collateral to secure repayment of loans made by Byline to entities other than the Stark Plaintiffs. In support of this Motion, the Stark Plaintiffs state:

**I.    THE DEFAULT JUDGMENT AND SECURITY AGREEMENTS**

On April 4, 2023 this Court entered a judgment ("Default Judgment"), ECF No. 209, in favor of Consolidated Plaintiff Byline Bank ("Byline") against Defendants Nicolayevsky,

Premium 72 Capital, LLC (formerly known as OPC Advisors, LLC), and Aynbet Investments, LLC (collectively "Defaulting Defendants"). The Default Judgment concerned the Defaulting Defendants' liability to Byline under two loans: (1) the Loan Agreement dated December 31, 2019 (the "2019 Loan"); and (2) the Loan Agreement dated December 28, 2020 (the "2020 Loan") (collectively the "Loans"). ECF Nos. 117-10 and 117-30. Byline granted the Loans to entities owned and controlled by Nicolayevsky, i.e., Premium 72 Capital, LLC (formerly known as OPC Advisors, LLC), and Aynbet Investments, LLC. Additionally, Nicolayevsky purported to make RMST a party to the Loans, without the authorization or knowledge of RMST, or any of the other Stark Plaintiffs. Worse still, Nicolayevsky executed two Security Agreements on behalf of RMST, again without the authority or knowledge of the Stark Plaintiffs, purporting to pledge RMST's assets as collateral for repayment of the Loans. However, no default judgment has been entered against RMST. RMST is separately represented and is not in default on any of Byline's claims. Moreover, RMST has its own claims against the Defaulting Defendants and Byline, including but not limited to claims challenging the enforceability of the Loans against it.

Notwithstanding the lack of judgment against RMST, Default Judgment paragraph two (2) provides that "Byline Bank may foreclose on the collateral pledged as security in the 2019 Security Agreements [ECF 100-1 pp. 45-62] and 2020 Security Agreement [ECF No. 100-1 pp. 100-07]." The pages the Court references regarding the "2019 Security Agreements" contain three (3) separate security agreements:

    1. December 31, 2019 Security Agreement executed by Arturo Nicolayevsky, purportedly on behalf of RMST Holding Company, Inc. (purportedly as "President" of RMST) (the "2019 RMST Security Agreement");

2. December 31, 2019 Security Agreement executed by Arturo Nicolayevsky on behalf of Aynbet Investments, LLC (the "2019 Aynbet Security Agreement"); and

3. December 31, 2019 Security Agreement executed by Arturo Nicolayevsky on behalf of OPC Advisors, LLC (the "2019 OPC Advisors, LLC Security Agreement").

The pages the Court references regarding the "2020 Security Agreement" contain a single security agreement, to which Premium 72 Capital, LLC; Aynbet Investments, LLC; and RMST Holding Company, Inc. are all purportedly parties. Nicolayevsky executed the 2020 Security Agreement on December 28, 2020 purportedly on behalf of all three entities.

The description of the collateral is identical in all four security agreements referenced in the Default Judgment:

> "All goods, inventory, equipment, accounts (including but not limited to all health-care-insurance receivables), chattel paper (whether tangible or electronic), instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposits accounts, investment property, money, commercial tort claims, contract rights and other rights to payment and performance (including but not limited to grant monies), insurance claims and proceeds, and general intangibles (including but not limited to all software and all payment intangibles); all oil, gas and other minerals before extraction; all oil, gas, other minerals and accounts constituting as-extracted collateral; all fixtures; all timber to be cut; all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements of and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property; all goodwill relating to the foregoing property; all records and data and embedded software relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process and such records and data on electronic media; and all supporting obligations relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property; and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property.

ECF No. 100-1 pp. 50, 56, 62, 107.

## II.     BYLINE SHOULD NOT BE PERMITTED TO FORECLOSE ON RMST'S ASSETS BECAUSE THERE IS NO JUDGMENT AGAINST RMST

As referenced above, the Default Judgment specifies Byline's right to foreclose on all three 2019 Security Agreements and the 2020 Security Agreement. However, RMST is the named counter-party on the 2019 RMST Security Agreement and is purportedly a party to the 2020 Security Agreement. Importantly, however, the Default Judgment was entered in Byline's favor only against Defendants Premium 72 Capital LLC, Aynbet Investments LLC, and Nicolayevsky. The Default Judgment was not entered against RMST. RMST is separately represented from the defaulting Defendants and has its own claims against the defaulting Defendants. Moreover, RMST has pending declaratory judgment claims challenging the validity of, *inter alia*, the 2019 RMST Security Agreement and its status as a purported party to the 2020 Security Agreement. Even though there has been no judgment entered against RMST, the Default Judgment seemingly gives Byline the right to foreclose on the 2019 RMST Security Agreement and the 2020 Security Agreement as it relates to RMST. RMST's assets should not be exposed to risks of Byline foreclosure under Byline's Default Judgment against the Defaulting Defendants where there is no judgment against RMST.  The Stark Plaintiffs take no issue with Byline's rights to foreclose on the assets of the parties against whom the Default Judgment was entered; specifically Nicolayevsky, Premium Capital 72 LLC, and Aynbet Investments LLC. However, to simultaneously allow foreclosure against RMST's assets based on the default of the other Defendants is an untenable result.

### III. RMST'S CLAIMS REMAIN PENDING

Further, as this Court is aware, the legitimacy of the Loans that Nicolayevsky improperly entered into on RMST's behalf and Nicolayevsky's authority to pledge RMST's assets as collateral are vigorously disputed in this case. The Stark Plaintiffs have multiple ongoing claims against Nicolayevsky and Byline in relation to the Loans before this Court. Claims connected to the Loans of Civil Theft, Conversion, Aiding and Abetting Civil Theft, Aiding and Abetting Conversion, Negligence, Gross Negligence, and five (5) requests for Declaratory Relief all remain pending. The Stark Plaintiffs' pending Declaratory Relief claims seek declarations as to, *inter alia*: the enforceability of the Loans (and other loans taken by the Defaulting Defendants) against the Stark Plaintiffs; the status of Nicolayevsky' unilateral and ultra vires actions on behalf of RMST and RM Stark being void as a matter of law; and the priority of interest in the Loans. Additionally, the Stark Plaintiffs' motion to dismiss Byline's complaint (ECF. No 101) is also still pending before this Court. Substantive issues that will affect the outcome of those claims have yet to be adjudicated.

Without the Stark Plaintiffs' authorization, participation, or knowledge, Byline granted the Loans to unauthorized third parties and wrongfully encumbered RMST's assets. Not only did the Stark Plaintiffs never approve of the Loans, none of them ever received any of the Loan proceeds nor benefited from the Loans. If Byline is permitted to foreclose on RMST's assets pursuant to the Default Judgment against the Defaulting Defendants, the Stark Plaintiffs' claims regarding the illegitimacy of the Loans would be rendered moot. Byline could effectively deny the Stark Plaintiffs' claims before this Court has adjudicated them on their merits. Unauthorized loans taken between Byline and the Defaulting Defendants, without the Stark Plaintiffs' knowledge or

participation, gave rise to the Stark Plaintiffs' claims. Those same claims now can be effectively terminated via Byline's foreclosure on RMST assets pursuant to a judgment **not against RMST**, but against the Defaulting Defendants. It would be an irrevocable injustice to allow Byline and the Defaulting Defendants to continue to determine RMST's assets and fate.

      A.    <u>Claims and Issues Remaining Before this Court</u>

The Stark Plaintiffs currently have seven (7) causes of action asserted against Byline before this Court: (1) Count XIII: Aiding and Abetting Civil Theft; (2) Count XV: Aiding and Abetting Conversion; (3) Count XVI: Negligence; (4) Count XVII: Gross Negligence; (5) Count XVIII: Declaratory Relief; (6) Count XXVI: Declaratory Relief; (7) Count XXIX: Declaratory Relief. Counts XVIII, XXVI, and XXIX specifically seek Declaratory Relief from this Court in finding that the Loans Byline improperly granted Defaulting Defendants are unenforceable against RMST and RM Stark.

      B.    <u>Nicolayevsky Purportedly Executing the Loans and Security Agreements on RMST's Behalf Should Not Circumvent Adjudication of Pending Issues and Claims</u>

Nicolayevsky and the other Defendants lacked the requisite authority to bind RMST to the Loans. An agency relationship vesting a person with actual authority to act on a principal's behalf requires (1) the principal's acknowledgement that the agent will act for it; (2) the agent's acceptance of the undertaking; and (3) the principal's control of the agent's actions. *Durham Com. Cap. Corp. v. Select Portfolio Servicing, Inc.*, No. 3:14-CV-877-J-34PDB, 2016 WL 6071633, at *20 (M.D. Fla. Oct. 17, 2016) (citation omitted). Apparent authority exists only "when the principal creates the appearance of an agency relationship." *Id.* (citation omitted). None of the Stark Plaintiffs acknowledged that Nicolayevsky could act for RMST nor did they control Nicolayevsky's actions.

Nicolayevsky never had actual authority to enter into loans on RMST's behalf and neither RMST nor the other Stark Plaintiffs ever ratified Nicolayevsky's illegitimately procured Loans. Likewise, neither RMST nor the other Stark Plaintiffs ever created an appearance that Nicolayevsky had authority to bind RMST to Byline's Loans; nor can it be said that Nicolayevsky's unapproved conduct unilaterally created such apparent authority. Nicolayevsky had no authority from RMST or any of the Stark Plaintiffs, either actual or apparent, to enter into the Loans nor bind RMST's assets thereto.

It is well settled and only logical that "one cannot incumber (sic) another man's property in the absence of consent, estoppel or some other special rule." *First Southern Ins. Co. v. Ocean State Bank*, 562 So.2d 789, 799 (Fla. 1st DCA 1990). In Florida, this fundamental fact is codified in Section 679.2031(2) ("§679.2031(2)") of Florida's Uniform Commercial Code. Under §679.2031 a security interest attaches and is enforceable against the debtor and third parties only when: 1) the secured party has given value; 2) **the debtor[1] has rights in the collateral or the power to transfer rights**; and 3) there is an authenticated security agreement that describes the collateral. (Emphasis added). Courts applying §679.2031(2) have properly found that when a person or entity secures a loan by pledging collateral that they have no right in, the collateral does not attach and the creditor has no interest therein. See *In re Boca Arena*, Inc., 237 B.R. 221, 224 (Bankr. S.D. Fla 1999) (holding that pledged collateral was not asset of debtor but of his wholly owned corporation, and debtor's disregard of separate legal identity of corporation made it impossible to find that the corporation consented to use of stock as collateral; thus creditor's

---

[1] Although it was RMST who became the obligator under the Loans, the "debtor" in the current matter for the purposes of interpreting §679.2031(2) is Nicolayevsky and the other Defendants; the parties who wrongfully pledged RMST assets in obtaining the Loans for themselves. RMST, who never entered into any loan with Byline, in no way, shape, or form can be considered the debtor in this matter.

THE STARK PLAINTIFFS' MOTION FOR CLARIFICATION OF ECF NO. 209

7

security interest did not attach to stock, as debtor never acquired rights therein). See also *First Southern Ins*. (wherein pledged collateral did not attach and creditor had no interest in collateral when an employee altered the title of a company car and then used the altered title to secure a personal loan). See also *In re Jenes*, 18 B.R. 498 (Bankr. S.D. Fla. 1982) (where credit union had no security interest in debtor's automobile due to the fact that the third party who took the loan and encumbered the automobile did so without debtor's knowledge or authority and at no time had any right in the automobile).

In the current matter, Nicolayevsky and the other Defaulting Defendants sought to personally benefit by encumbering RMST's assets under the Loans without any rights, or the power to transfer rights, therein. The Stark Plaintiffs have properly alleged that Byline willfully and knowingly provided the Defaulting Defendants with proceeds from the Loans even though Byline was aware that Defaulting Defendants did not have authority to enter into the Loans on behalf of RMST. Even if Byline were not aware that the Defaulting Defendants did not have the right or authority to pledge RMST's assets, such awareness is inapposite under §679.2031(2). Pursuant to §679.2031(2), and as illustrated by the decisions discussed above, collateral does not attach when the pledger has no rights to pledge it; regardless of the creditor's knowledge thereto.

The Stark Plaintiffs' claims regarding the enforceability of the Loans and the Defaulting Defendants' inability to attach RMST's assets to the Loans remain before this Court. Byline foreclosing on RMST's assets under the Default Judgment presents an unacceptable risk that the Stark Plaintiffs' interests and claims will be prematurely extinguished. Additionally, the Stark Plaintiffs' claims against Byline for aiding and abetting Nicolayevsky and the other Defaulting Defendants also remain pending before this Court. If Byline is permitted to foreclose on RMST

assets, the Stark Plaintiffs' claims against Byline would also be circumvented before their proper resolution. The Stark Plaintiff's deserve the right to fully pursue their claims before this Court.

IV. **ADDITIONAL CONSIDERATIONS REGARDING POTENTIAL BYLINE FORECLOSURE**

Equity in and ownership of RM Stark is included in the collateral that Byline can foreclose on under the Default Judgment. However, RM Stark is a FINRA-registered broker/dealer. Parties to the transfer of ownership or control of a registered broker/dealer must comply with strict procedures such as obtaining FINRA approval of a Continuing Membership Application and timely filing application fees. *See* FINRA Rules 1012 and 1017. Broker/dealers who do not comply with the SEC and FINRA's strict procedures can face harsh penalties including the loss of FINRA membership and their ability to conduct business.

The Stark Plaintiffs vehemently state that any finding legitimatizing Byline and the Defaulting Defendants' unauthorized and improper entry into the Loans, and wrongful encumbrance of RMST's assets related thereto, would be a miscarriage of justice. Such miscarriage would be compounded and spread to RM Stark customers should transfer of RM Stark ownership and control be thoughtlessly handled via sudden Byline foreclosure under the Default Judgment. If any foreclosure is not handled meticulously and with great care, RM Stark could be forced to close, leaving its customers and their assets under RM Stark's management in peril. Without clarification regarding Byline's ability to foreclose on RMST assets under the Default Judgment, such injustice could occur before final adjudication on the merits of the Stark Plaintiffs' claims regarding the unenforceability of the Loans and the illegitimate encumbrance of RMST's assets.

## V.     REQUEST FOR CLARIFICATION

As shown in the Stark Plaintiffs' Third Amended Complaint (ECF No. 117), Response in Opposition to Byline Bank's Motion to Dismiss Third Amended Complaint (ECF No. 199), and above, there remain bona fide and continuing disputes before this Court regarding the enforceability of the Loans. There also remains bona fide and continuing controversy as to the attachment of RMST's assets as collateral to the Loans before this Court. Bylines Default Judgment against the Defaulting Defendants should entitle them to foreclose only on the assets of the Defaulting Defendants. Without clarification from this Court, there is a substantial risk of Byline premature foreclosure on RMST assets. Foreclosure that would irrevocably harm the Stark Plaintiffs' interests and rights, and render their claims moot before their final adjudication. Byline should not be allowed to extinguish the Stark Plaintiffs' claims against them via a Default Judgment against the third-parties responsible for improperly benefitting from and encumbering RMST assets under the unauthorized Loans.

In light of the foregoing, the Stark Plaintiffs respectfully ask this Court to clarify ECF No. 209 by entering an Order, or modifying the language of ECF No. 209, to indicate that Byline may foreclose on the collateral referenced in:

1. The 2019 Aynbet Security Agreement;
2. The 2019 OPC Advisors, LLC Security Agreement; and/or
3. The 2020 Security Agreement, except as to collateral belonging to RMST.

Dated: May 1, 2023                                    Respectfully Submitted,

**D'AMURA & ZAIDMAN, PLLC**

*/s/ Richard T. Lobas*
RICHARD A. D'AMURA
Florida State Bar No. 663921
RICHARD T. LOBAS (*pro hac vice*)
Ohio Bar No. 0093658
1061 Michigan Ave., Unit 1
Miami Beach, Florida 33139
Phone: (310) 945-5306
Email: rdamura@dz-pllc.com
　　　　rlobas@dz-pllc.com

*AND*

*/s/ Joel M. McTague*
JOEL MARTIN MCTAGUE, ESQ.
Florida Bar No. 174406
LEANNE B. WAGNER, ESQ.
Florida Bar No. 0057847
Frank Weinberg Black, P.L.
7805 SW 6th Court
Plantation, FL 33324
Phone: 954-474-8000
Email: jmctague@fwblaw.net
　　　　talberga@fwblaw.net

*Attorneys for Plaintiffs RMST Holding Company, Inc., R.M. Stark & Co., Inc., and Gary L. Stark*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 1st day of May, 2023, a copy of the foregoing has been electronically filed with the Clerk of Court using CM/ECF and is being served via Electronic Mail on parties having appeared in this matter.

I further certify that the following parties will be served by regular U.S. Mail:

Zahav Asset Management, LLC

Kingdom Logistics, LLC

Prompt Capital Funding, LLC

Pinnacle Business Funding, LLC

Bitty Advance 2, LLC

By: */s/ Richard T. Lobas*