## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 9:21-cv-81995-AMC

**RMST HOLDING COMPANY, INC.,** *et al.*

     Plaintiffs,

v.

**PREMIUM 72 CAPITAL, LLC,** *et al.*

     Defendants.

_____/

**BYLINE BANK,**                              **Consolidated Action: 22-80838-CIV-AMC**

     Plaintiff,

v.

**PREMIUM 72 CAPITAL LLC,** *et al.*

     Defendants.

_____/

### PLAINTIFF GARY L. STARK'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Now comes Plaintiff, Gary L. Stark ("Mr. Stark"), and pursuant to Fed.R. 56 and Local Rule 56.1, moves this Court for summary judgment against Defendants Premium 72/OPC, Premium 72 International, LLC, Arturo Nicolayevsky, and Eduardo Perez on the following claims in the Third Amended Complaint: (1) Count IV – Breach of Promissory Note; (2) Count V – Breach of Stock Purchase Agreement; and (3) Count VI – Breach of Supplemental Purchase Agreement. In support of this Motion, Mr. Stark incorporates the pleadings by reference and submits the attached Memorandum in Support, along with the contemporaneously filed Statement of Material Facts ("SMF"), with supporting declarations of Gary L. Stark and Ellen Adler.

Dated: June 16, 2023

Respectfully submitted,

**D'AMURA & ZAIDMAN, PLLC**

*/s/ Richard T. Lobas*
RICHARD A. D'AMURA
Florida State Bar No. 663921
RICHARD T. LOBAS (*pro hac vice*)
Ohio Bar No. 0093658
1061 Michigan Ave., Unit 1
Miami Beach, Florida 33139
Phone: (310) 945-5306
Email: rdamura@dz-pllc.com
            rlobas@dz-pllc.com

AND

*/s/ Joel M. McTague*
JOEL MARTIN MCTAGUE, ESQ.
Florida Bar No. 174406
LEANNE B. WAGNER, ESQ.
Florida Bar No. 0057847
Frank Weinberg Black, P.L.
7805 SW 6th Court
Plantation, FL 33324
Phone: 954-474-8000
Email: jmctague@fwblaw.net
            talberga@fwblaw.net

*Attorneys for Plaintiffs RMST Holding Company, Inc., R.M. Stark & Co., Inc., and Gary L. Stark*

<u>**MEMORANDUM IN SUPPORT**</u>

**I.      PRELIMINARY STATEMENT**

On October 28, 2021 Plaintiffs RMST Holding Company, Inc. ("RMST"), R.M. Stark & Co., Inc. ("RM Stark"), and Gary L. Stark ("Mr. Stark") (collectively, the "Stark Plaintiffs") filed their Complaint against Premium 72 Capital, LLC, Premium 72 International, LLC, Aynbet Investments, LLC, Arturo Nicolayevksy, Eduardo Perez (collectively, "Purchasing Defendants") and Isaac Wright bringing thirteen claims for relief, including, but not limited to, multiple claims for declaratory relief and breach, injunctive relief, tortious interference, civil theft, and conversion. (ECF No. 1). The Stark Plaintiffs later filed their Second Amended Complaint on August 15, 2022, adding several new Defendants, including Byline Bank, and nineteen additional claims for relief. On November 14, 2022, the Stark Plaintiffs filed their Third Amended Complaint (the "TAC"), pursuant to the Court's October 26, 2022 Order (ECF No. 112). The Purchasing Defendants, with the exception of Mr. Nicolayevsky, filed a motion to dismiss the TAC on April 20, 2023, which remains pending.[1]

The Stark Plaintiffs' claims all arise out of the Purchasing Defendants' purchase of RMST from Mr. Stark and their subsequent misconduct in operating RMST and its wholly-owned subsidiary, RM Stark. Through this Motion, Mr. Stark seeks summary judgment only on: (1) Count IV – Breach of Promissory Note; (2) Count V – Breach of Stock Purchase Agreement; and (3) Count VI – Breach of Supplemental Purchase Agreement. Mr. Stark has performed all of his obligations under those agreements and the Purchasing Defendants have failed to fulfill theirs, and summary judgment is warranted on those claims.

---

[1] The Purchasing Defendants' Motion to Dismiss the TAC should be denied for the reasons detailed in the Stark Plaintiffs' Opposition, filed May 4, 2023.

PLAINTIFF GARY L. STARK'S MOTION FOR PARTIAL SUMMARY JUDGMENT

II.      **RELEVANT BACKGROUND – THE SALE OF RMST AND DEFENDANTS' FAILURE TO PAY**

      A.      The Letter of Intent

RMST is a holding company that wholly owns RM Stark, a broker-dealer registered with the Securities and Exchange Commission and subject to the rules and regulations of the Financial Industry Regulatory Authority ("FINRA") (ECF No. 26-2, Declaration of Gary L. Stark (hereafter "Stark Dec.", ¶ 2; SMF, ¶ 3).[2] Mr. Stark purchased a controlling interest in RM Stark in 1994 and held that interest until 2020. *Id.*; SMF, ¶ 4. In 2019, Mr. Stark entered into negotiations with Purchasing Defendants for the sale of RMST and RM Stark. To that end, Mr. Stark, as president and CEO of RM Stark, executed a Letter of Intent with OPC Advisors, LLC ("OPC"). *Id.*; SMF, ¶ 5. OPC is now known as Premium 72 Capital, LLC. That entity is referred to as Premium 72 Capital/OPC in this Motion.

      B.      The Stock Purchase Agreement, Development of a Bifurcated Transaction, and First Closing

On January 2, 2020, the parties executed the "Gary L. Stark, et al. to OPC Advisors, LLC Stock Purchase Agreement" (the "Stock Purchase Agreement"). (Stark Dec., ¶ 7; SMF, ¶ 10). The parties to the Stock Purchase Agreement were Premium 72 Capital/OPC as purchaser on the one hand and Mr. Stark, as seller, on the other hand.[3] Mr. Nicolayevsky executed the Stock Purchase Agreement on behalf of Premium 72 Capital/OPC on January 2, 2020. *Id.*; SMF, ¶ 11. The intent of the Stock Purchase Agreement was to sell one hundred percent (100%) of the outstanding stock

---

[2] The Stark Dec. was previously filed in connection with the earlier proceedings on the Stark Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction, and is also attached to the SMF.

[3] The Bryan and Gretchen Florescue Irrevocable Trusts were also parties to the Stock Purchase Agreement. Those trusts were passive shareholders in RMST, and their shares were also transferred to Premium 72 Capital/OPC as part of the transaction at issue.

of RMST to Mr. Nicolayevsky, his associates, including Mr. Perez, and/or entities owned or controlled by him. (Stark Dec., ¶ 8; SMF, ¶ 12).

FINRA's rules provide that FINRA has a right to approve (or disapprove) the sale of one hundred percent (100%) of the stock of the holding company, like RMST, of a FINRA registered broker-dealer, like RM Stark. (Stark Dec., ¶ 8; SMF, ¶ 13). Because of this requirement, the parties devised a bifurcated transaction, as detailed in the Stock Purchase Agreement, whereby a portion of the RMST stock would be transferred upon an initial closing (the "First Closing") and the balance of the stock would be transferred in a subsequent closing following the necessary FINRA approval (the "Second Closing").  (Stark Dec., ¶ 9; SMF, ¶ 14). In connection with the First Closing, forty-eight (48) shares, equivalent to twenty-four percent (24%), of RMST, were contingently transferred to Premium 72 Capital/OPC on or about January 2, 2020. (Stark Dec., ¶ 10; SMF, ¶ 16).

In furtherance of efforts to obtain FINRA approval and thereafter proceed to the Second Closing, Premium 72 Capital/OPC filed a Continuing Member Application Form (the "Application") with FINRA on August 20, 2020. (Stark Dec., ¶ 11; SMF, ¶ 16).   On September 2, 2020, FINRA approved the Continuing Membership Application via letter (the "Approval Letter").  (Stark Dec. at ¶ 12, Ex. D; SMF, ¶ 19).   Additionally, FINRA's approval of the Continuing Member Application was contingent upon the execution of a Membership Agreement by RM Stark's incoming replacement CEO, Stacey Stark. (Stark Dec., ¶ 12; SMF, ¶ 18).  Stacey Stark executed the R.M. Stark & Co., Inc. Membership Agreement (the "Membership Agreement") on September 2, 2020, and submitted it to FINRA.  (Stark Dec., 13; SMF, ¶ 19).

C.    The Second Closing

Following FINRA's approval and execution of the Membership Agreement, the parties proceeded to the Second Closing. On or about September 22, 2020, Mr. Stark executed a Supplemental Purchase Agreement between him, on one hand, and Premium 72 International[4], Mr. Nicolayevsky, and Mr. Perez on the other hand.  (Stark Dec., ¶ 14; SMF, ¶ 20). Pursuant to the Supplemental Purchase Agreement, Mr. Stark was to receive a total of four million five-hundred thousand dollars ($4,500,000) in connection with the Second Closing. (Stark Dec., ¶ 16; SMF, ¶ 22). Specifically, the Supplemental Purchase Agreement contemplated payment by Premium 72/OPC to Mr. Stark in the amount of one million six-hundred thousand dollars ($1,600,000) on or about September 22, 2020.[5] (Stark Dec., ¶ 16; SMF, ¶ 23). Also, pursuant to the Supplemental Purchase Agreement, Premium 72 International would execute a promissory note, to be guaranteed by Messrs. Nicolayevsky and Perez, in Mr. Stark's favor, for the remaining two million nine-hundred thousand dollars ($2,900,000) (Stark Dec., ¶ 16; SMF, ¶ 24).  To that end, on September 22, 2020, Premium 72 International, as maker, and Messrs. Nicolayevsky and Perez, as guarantors, signed a Promissory Note in Mr. Stark's favor (the "Promissory Note"). (Stark Dec. at ¶ 17; Ex. G; Adler Dec., ¶ 4; SMF, ¶ 25).

On or about September 22, 2020, at the Second Closing, as contemplated in the Stock Purchase Agreement, Supplemental Purchase Agreement, and Promissory Note, Premium 72 Capital/OPC was required to pay Mr. Stark one million six-hundred thousand ($1,600,000) in cash

---

[4] The "Premium 72" entity that was a party to the original Stock Purchase Agreement was Premium 72 Capital/OPC. While Premium 72 International, a different entity, was a party to the Supplemental Purchase Agreement, the Supplemental Purchase Agreement nonetheless contemplates transfer of RMST stock to Premium 72 Capital/OPC. However, the Supplemental Purchase Agreement requires Premium 72 International and its managing members, i.e., Mr. Nicolayevsky and Mr. Perez, to assume the liability for the purchase price of RMST.  Stark Dec., Ex. F at p. 1.

[5] The Stock Purchase Agreement originally contemplated payment of $1,216,000 from Premium 72/OPC to Mr. Stark. This amount was amended to $1,600,000 through execution of the Supplemental Purchase Agreement.

PLAINTIFF GARY L. STARK'S MOTION FOR PARTIAL SUMMARY JUDGMENT

(the "Partial Payment").  Mr. Stark received the Partial Payment at the Second Closing, except for approximately thirty five thousand dollars ($35,000), which remains outstanding.  (Stark Dec., ¶ 20; SMF, ¶ 28).  Thereafter, in reliance on the Partial Payment and promises made in the Stock Purchase Agreement, Supplemental Purchase Agreement, and Promissory Note, Mr. Stark transferred the remaining shares of RMST to Premium 72 Capital/OPC on or about September 22, 2020.  (Stark Dec., ¶ 21; SMF, ¶ 29).  Mr. Stark has <u>not</u> received any additional payment as required under the Supplemental Purchase Agreement or the Promissory Note since the Partial Payment. (Stark Dec., ¶ 22; SMF, ¶ 30).  Accordingly, Premium 72 Capital/OPC, Premium 72 International, Mr. Nicolayevsky, and Mr. Perez are in complete and material default of their obligations to Mr. Stark.

       D.    <u>Summary of Agreements and Amounts Owed</u>

For the Court's ease of reference, below is a summary of the amounts owed to Mr. Stark under the various transaction documents, organized by party:

- Premium 72/OPC: $35,000.00 under the Stock Purchase Agreement and the Supplemental Purchase Agreement (i.e., the unpaid portion of the Partial Payment);

- Premium 72 International: $2.9 million, jointly and severally with Mr. Nicolayevsky and Mr. Perez, pursuant to the Promissory Note;

- Mr. Nicolayevsky: $2.9 million, jointly and severally with Premium 72 International and Mr. Perez, pursuant to the Promissory Note; and

- Mr. Perez: $2.9 million, jointly and severally with Premium 72 International and Mr. Nicolayevsky, pursuant to the Promissory Note.

Through this Motion, Mr. Stark seeks: (1) judgment against Premium 72/OPC in the amount of $35,000.00 plus interest; (2) judgment in the amount of $2.9 million plus interest against

Premium 72 International, Mr. Nicolayevsky, and Mr. Perez, jointly and severally; (3) an Order requiring Premium 72 International, Mr. Nicolayevsky, and Mr. Perez to pay Mr. Stark his attorneys' fees incurred in this case, in an amount to be determined by the Court following entry of summary judgment in Mr. Stark's favor.[6]

### III.     SUMMARY JUDGMENT STANDARD

Fed.R.Civ.P. 56(a) provides:

> A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

A court must view the facts in the light most favorable to the non-moving party, drawing "all reasonable inferences in favor of the nonmovant and may not weigh evidence or make credibility determinations, which `are jury functions, not those of a judge.'" *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1179 (11th Cir. 2019).  "For factual issues to be considered genuine, they must have a real basis in the record." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (citation omitted). "Speculation cannot create a genuine issue of material fact sufficient to defeat a well-supported motion for summary judgment." *Kinsale Ins. Co. v. Pride of St. Lucie Lodge 1189, Inc.*, 2022 WL 2763325, at *3 (S.D. Fla. July 14, 2022) (citation omitted). The movant bears the initial burden of demonstrating the absence of a genuine issue as to material facts. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). When the movant has satisfied its initial burden, the burden shifts to the non-moving party to prove a genuine issue of material fact. *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002); Fed. R. Civ. P. 56(e).  The material fact must go to an essential element of the case.  *Celotex Corp. v Catrett*, 477 US 317, 323 (1986).

---

[6] Under the Promissory Note, Mr. Stark is entitled to his attorneys' fees in the event of a breach.

PLAINTIFF GARY L. STARK'S MOTION FOR PARTIAL SUMMARY JUDGMENT

The non-moving party must show something more than just a mere metaphysical doubt as to the material facts. *Ray v. Equifax Info Servs. LLC*, 327 F.App'x 819, 825 (11ᵗʰ Cir. 2009). "[I]f the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment is proper. *Kinsale Ins. Co.* at *3 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

**IV.     MR. STARK IS ENTITLED TO SUMMARY JUDGMENT ON HIS CLAIMS FOR BREACH OF THE STOCK PURCHASE AGREEMENT, THE SUPPLEMENTAL PURCHASE AGREEMENT, AND THE PROMISSORY NOTE**

Premium 72 International, Mr. Nicolayevsky, Mr. Perez, and Premium 72/OPC have each breached their respective agreements with Mr. Stark. As such, they are each liable to Mr. Stark as described below:

A.     Premium 72 International

Premium 72 International is the "Maker" of the Promissory Note to Mr. Stark, and agreed to pay Mr. Stark $2.9 million thereunder. To establish a breach of contract – as applicable to Premium 72 International, the Promissory Note – a plaintiff must show a valid agreement exists, that agreement has been materially breached, and the plaintiff has been damaged by the breach. *See e.g. ConSeal Int'l Inc. v. Neogen Corp.,* 488 F. Supp. 3d 1257, 1268 (S.D. Fla. 2020). "In a suit to enforce a promissory note, where the claimant establishes, through pleadings, exhibits, and affidavits, the existence of the note, the borrower's default, and the amount due under the note, the claimant has established a prima facie case. The burden then shifts to the other party to establish that the amount is not due and owing. In the absence of such proof, summary judgment in favor of the claimant is appropriate." *United States v. Pelletier*, No. 8:08-cv-2224-T-33EAJ, 2009 WL 800140, at *2 (M.D.Fla. Mar. 24, 2009). Here, a copy of the Promissory Note is attached to the Third Amended Complaint as Exhibit E. It is also attached to the declaration of Ellen Adler as

Exhibit A. Arturo Nicolayevsky executed the Promissory Note on behalf of Premium 72 International as its "Managing Member." There is no genuine dispute of material fact as to the existence of the Promissory Note.

Once the existence of a valid agreement is established, a plaintiff then must show that the agreement has been materially breached. *ConSeal Int'l Inc.* at 1268. "A material breach of a contract is a failure, without legal excuse, to perform any promise or obligation or that goes to the essence of the contract." See, *e.g. Beefy Trail, Inc. v. Beefy King Int'l, Inc.,* 267 So. 2d 853, 857 (Fla. 4th Dist. Ct. App. 1972). The Promissory Note provides the following with respect to payment to Mr. Stark, in pertinent part:

> Upon the Second Closing (as set forth in Section 1.2 of the OPC Stock Purchase Agreement (Exhibit "A" hereto), [Premium 72 International] shall remit payment to [Mr. Stark] the sum of Seventy Two Thousand Five Hundred Dollars U.S. (U.S. $72,500.00) representing Fifty Percent (50%) of the First (1st) Year's Interest due on the principal amount of Two Million Nine Hundred Thousand Dollars U.S. (U.S. $2,900,000.00).

> Within Thirty (30) Days of the aforesaid payment, [Premium 72 International] shall remit to [Mr. Stark] the sum of Seventy Two Thousand Five Hundred  Dollars U.S. (U.S. $72,500.00) representing the balance of the First (1st) Year's Interest due on the principal amount of Two Million Nine Hundred Thousand Dollars U.S. (U.S. $2,900,000.00).

> Thereafter, commencing on the anniversary of the Second (2nd) Year after Date, the unpaid principal balance of this Promissory Note (the "Note"), if not sooner paid or declared to be due in accordance with the terms hereof, together with all accrued and unpaid interest thereon and any other amounts due and payable hereunder shall be due and payable in Twelve (12) Quarterly Installments pursuant to the Loan Amortization Schedule attached to this Note as Exhibit "B" and incorporated herein by reference.

Premium 72 International has not made a single payment to Mr. Stark as required by the Promissory Note. Specifically, it failed to make the initial payment of $72,500.00 at the Second Closing; failed to make the $72,500.00 payment 30 days after the Second Closing; and failed to

make the $261,749.11 payment due on September 22, 2022. (Stark Dec., ¶ 22). With respect to

failure to make payments, the Promissory Note states, in pertinent part:

> Any one or more of the following shall constitute an Event of Default as the term is used herein:
>
> (a) [Premium 72 International] fails to make any payment of principal or interest within five (5) days after the same is due and payable, provided there are not more than two (2) such late payments within any consecutive twelve (12) month period; and/or,
>
> ***
> (f) [Premium 72 International] breaches any other provision of this Note or any other agreement(s) securing or guaranteeing this Note, or Guarantors breach any of the provisions of the Guaranty.

Given that Mr. Stark has not received a single payment from Premium 72 International,

there has most certainly been an "Event of Default." The Promissory Note further states:

> Without limiting any of the rights and remedies of [Mr. Stark] set forth in this Note, upon an Event of Default [Mr. Stark] may, at his option, without further notice or demand, (i) declare the outstanding principal balance and all accrued but unpaid interest under this Note at once due and payable, and (ii) pursue any and all other rights, remedies, and recourse available to [Mr. Stark] hereunder or under applicable law.
>
> [Premium 72 International], and all endorsers, Guarantors, and other persons obligated heron, hereby waive presentment, demand, protest, notice of demand, notice of protest, and notice of nonpayment. [Premium 72 International] shall pay, promptly on demand of the Payee, all costs and expenses, including reasonable attorney's fees, incurred or paid by the Payee in connection with the enforcement of the Payee's rights and remedies under this Note.

Simply put, Premium 72 International has failed to make any payments to Mr. Stark,

despite such payments being due and payable, thereby materially breaching the Promissory Note

and constituting an Event of Default. Mr. Stark has therefore declared the entire principal balance,

accrued interest, and attorneys' fees due and payable immediately.[7] He is entitled to pursue all applicable rights, remedies, and recourse as a result of the Event of Default, including obtaining a judgment for the full principal balance, accrued interest, and attorneys' fees from this Court.

Finally, a plaintiff with a valid agreement that has been materially breached must demonstrate they have been damaged by said breach. *ConSeal Int'l Inc. v. Neogen Corp.,* 488 F. Supp. 3d 1257, 1268 (S.D. Fla. 2020). "[T]he party injured by the breach is entitled to recover those damages that naturally flow from the breach and can reasonably be said to have been contemplated by the parties at the time the contract was entered." *Id.* (citation omitted).  In this case, damages are clear. Premium 72 International agreed to pay Mr. Stark pursuant to a well-defined schedule. Premium 72 International failed to do so, and, therefore, Mr. Stark has been damaged by the non-payment. Mr. Stark fulfilled all of his obligations under the Stock Purchase Agreement and Supplemental Purchase Agreement, including transferring ownership of RMST to Premium 72/OPC. (Stark Dec., ¶ 21). The Promissory Note states that if defaulted upon, the outstanding principal balance and the unpaid interest are immediately due and Purchasing Defendants shall pay Mr. Stark's attorneys' fees incurred to enforce the Note (Stark Dec., Ex. G at p. 3). Mr. Stark sold his company but was not paid, and has now incurred attorneys' fees in pursuit of enforcement of that long overdue payment. Mr. Stark's damages from the breach are self-evident. Premium 72 International is liable to Mr. Stark for $2.9 million in principal, plus interest and attorneys' fees as Maker of the Promissory Note.

B.    Arturo Nicolayevsky and Eduardo Perez

There is no genuine dispute of material fact that Mr. Nicolayevsky and Mr. Perez both signed the Promissory Note as guarantors. (See Adler Dec. at Ex. A; Stark Dec., Ex. G at p. 3;

---

[7] Mr. Stark requests that the Court hold a hearing on the amount of attorneys' fees to be awarded to Mr. Stark in the event the Court grants the instant Motion.

SMF, ¶ 25). Additionally, the Promissory Note provides, in pertinent part: "[t]his Note is guaranteed by the personal Guaranty (herein so called) of Arturo Nicolayevsky and Eduardo Perez Alduncin, owners of [Premium 72 International] dated of even date herewith." "In Florida, the elements of an action for breach of a guaranty arise from a debtor's default and the guarantor's subsequent failure to pay. *Bank First v. Guillem*, 2009 WL 1930190, *5 (M.D. Fla. 2009) (*citing Brunswick Corp. v. Creel*, 471 So.2d 617, 618 (Fla. 5th Dist. Ct. App. 1985). In an action against the guarantor, the creditor has the burden of establishing that all of the conditions precedent to the guarantor's liability have occurred or were performed. *Id.* (*citing Alderman Interior Sys., Inc. v. First Nat'l-Heller Factors, Inc.*, 376 So.2d 22, 23 (Fla. 2d Dist. Ct. App. 1979).

Here, as demonstrated above, there is no dispute that Premium 72 International has failed to pay its obligations under the Promissory Note. Neither Mr. Nicolayevsky nor Mr. Perez have satisfied Premium 72 International's payment obligations, thereby materially breaching their duties as guarantors. Additionally, the Promissory Note provides:

> As security for the prompt payment of this Note, Guarantors shall execute stock powers for the transfer of securities held by Guarantors to [Mr. Stark] in an amount equal to the balance of all principal and interest due under the Note. As additional collateral, Arturo Nicolayevsky shall execute an irrevocable assignment of Two Million Nine Hundred [Thousand] U.S. Dollars (U.S. $2,900,000.00) from the proceeds of his existing Life Insurance Policy AXA Insurance, Policy #11931115.

Neither Mr. Nicolayevsky nor Mr. Perez executed stock powers as required. Mr. Nicolayevsky did not execute an irrevocable assignment of proceeds from a life insurance policy as required. Therefore, through failure to satisfy Premium 72 International's payment obligations upon Premium 72 International's failure to pay, and failure to execute required documents as guarantors, Mr. Nicolayevsky and Mr. Perez have materially breached their obligations under the Promissory Note. Given that an Event of Default has occurred, Mr. Stark is entitled to summary judgment on his claims against Mr. Nicolayevsky and Mr. Perez for the material breach of the

Promissory Note, in the amount of $2.9 million, jointly and severally, together with fees and interest. *See MBC Gospel Network, LLC v. Florida's New Channel, LC*, 277 So.3d 647 (Fla. 1st Dist. Ct. App. 2019); *see also Fort Plantation Investments, LLC v. Ironstone Bank*, 85 So.3d 1169, 1171 (2012) (Fla. 5th Dist. Ct. App. 2012) (noting that "[w]here the guaranty is absolute, the guarantor becomes liable upon non-payment by the principal, and the person in whose favor the guaranty runs has no duty to first pursue the principal before resorting to the guarantors.") (*quoting Anderson v. Trade Winds Enters.,* 241 So.2d 174, 177 (Fla. 4th Dist. Ct. App. 1970)).

C.    Premium 72/OPC

Premium 72/OPC is a party to the Stock Purchase Agreement and the Supplemental Purchase Agreement. The Stock Purchase Agreement originally indicated that Premium 72/OPC was to pay Mr. Stark $1.216 million at the Second Closing. The Supplemental Purchase Agreement, however, revised this amount, and indicates that Premium 72/OPC is to pay Mr. Stark $1.6 million at the Second Closing. Mr. Stark only received $1,565,000 from Premium 72/OPC at the Second Closing, $35,000 short of the full amount due.

"Contracts are construed in accordance with their plain language, as bargained for by the parties." *Gorel v. Bank of New York Mellon*, 165 So. 3d 44, 47 (Fla. 5th Dist. Ct. App2015)(citation omitted). Mr. Stark performed his obligations, having transferred his interest in RMST to Premium 72/OPC pursuant to the terms of the Stock Purchase Agreement and the Supplemental Purchase Agreement. Premium 72/OPC materially breached the agreements by failing to pay Mr. Stark the full amount due thereunder. Accordingly, Premium 72/OPC is liable to Mr. Stark for the unpaid amount thereunder - $35,000.

PLAINTIFF GARY L. STARK'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## V.     <u>CONCLUSION</u>

For the foregoing reasons, Gary L. Stark respectfully requests this Court grant his Motion for Partial Summary Judgment and enter judgment for the unpaid balance of principal, interest, and reasonable attorneys' fees incurred to pursue enforcement of payment against Defendants Premium 72/OPC, Premium 72 International, LLC, Arturo Nicolayevsky, and Eduardo Perez. Mr. Stark requests that once judgment is entered, a hearing be held to determine the amount of accrued interest and attorneys' fees to be paid to Mr. Stark.

Dated: June 16, 2023

Respectfully submitted,

**D'AMURA & ZAIDMAN, PLLC**

*/s/ Richard T. Lobas*
RICHARD A. D'AMURA
Florida State Bar No. 663921
RICHARD T. LOBAS (*pro hac vice*)
Ohio Bar No. 0093658
1061 Michigan Ave., Unit 1
Miami Beach, Florida 33139
Phone: (310) 945-5306
Email: rdamura@dz-pllc.com
          rlobas@dz-pllc.com

AND

*/s/ Joel M. McTague*
JOEL MARTIN MCTAGUE, ESQ.
Florida Bar No. 174406
LEANNE B. WAGNER, ESQ.
Florida Bar No. 0057847
Frank Weinberg Black, P.L.
7805 SW 6th Court
Plantation, FL 33324
Phone: 954-474-8000
Email: jmctague@fwblaw.net
          talberga@fwblaw.net
*Attorneys for Plaintiffs RMST Holding Company, Inc., R.M. Stark & Co., Inc., and Gary L. Stark*

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on this 16th day of June, 2023, a copy of the foregoing has been electronically filed with the Clerk of Court using CM/ECF and is being served via Electronic Mail on parties having appeared in this matter.

I further certify that the following parties will be served by regular U.S. Mail:

Zahav Asset Management, LLC

Kingdom Logistics, LLC

Prompt Capital Funding, LLC

Pinnacle Business Funding, LLC

Bitty Advance 2, LLC

By: <u>*/s/ Richard T. Lobas*</u>

PLAINTIFF GARY L. STARK'S MOTION FOR PARTIAL SUMMARY JUDGMENT